J-S52004-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
v. :
:
CLIFFORD LEE FASSNACHT, :
:
Appellant : No. 259 MDA 2017

Appeal from the PCRA Order December 8, 2016
in the Court of Common Pleas of Lancaster County,
Criminal Division, No(s): CP-36-CR-0000895-2015;
CP-36-CR-0002763-2007; CP-36-CR-0003473-2008;
CP-36-CR-0005913-2014

BEFORE: GANTMAN, P.J., LAZARUS and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.: **FILED AUGUST 31, 2017**

Clifford Lee Fassnacht ("Fassnacht") appeals from the Order denying

his first Petition filed pursuant to the Post Conviction Relief Act ("PCRA").

**See** 42 Pa.C.S.A. §§ 9541-9546. We affirm.

In its Opinion, the PCRA court set forth the relevant factual and

procedural history, which we adopt for the purpose of this appeal. **See**

PCRA Court Opinion, 12/8/16, at 1-4.

The PCRA court denied Fassnacht's Petition on December 8, 2016.

Fassnacht subsequently filed a timely Notice of Appeal and a court-ordered

Pa.R.A.P. 1925(b) Concise Statement of errors complained of on appeal.

On appeal, Fassnacht raises the following questions for our review:

I. Did the PCRA court err when it did not permit into evidence[,]
and did not consider[,] the report of Timothy Martin, D.O., Ph.D.
[("Dr. Martin"),] when rendering its decision that [] Fassnacht
entered a knowing and intelligent plea?

II. Did the PCRA court err when it denied [Fassnacht's PCRA Petition] when it found that trial counsel provided effective assistance of counsel[,] when trial counsel permitted [] Fassnacht to enter a plea the day after suffering a seizure?

III. Did the PCRA court err when it found that [] Fassnacht's plea was knowingly, voluntarily, and intelligently entered?

Brief for Appellant at 4 (issues renumbered).

Our standard of review of a PCRA court's denial of a petition for post[-]conviction relief is well-settled: We must examine whether the record supports the PCRA court's determination, and whether the PCRA court's determination is free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record.

*Commonwealth v. Franklin*, 990 A.2d 795, 797 (Pa. Super. 2010) (citation omitted).

In his first claim, Fassnacht argues that the PCRA court erred by failing to consider Dr. Martin's report regarding the effect of seizures on an individual's ability to think, concentrate and function. Brief for Appellant at 14-15.

Fassnacht failed to explain the relevance of the report, or to cite any relevant case law concerning this issue. Because Fassnacht failed to adequately develop his first claim, it is waived. *See* Pa.R.A.P. 2119(a) (stating that the argument shall include "such discussion and citation of authorities as are deemed pertinent."); *see also Commonwealth v. Samuel*, 102 A.3d 1001, 1005 (Pa. Super. 2014) (concluding that appellant

waived his claim by failing to adequately develop his argument or provide citation to and discussion of relevant authority).[1]

In his second claim, Fassnacht asserts that the PCRA court erred in concluding that his plea counsel provided effective assistance at a time when Fassnacht was not competent to enter a guilty plea. Brief for Appellant at 12. Fassnacht cites his testimony at the PCRA hearing, during which he stated that he did not remember talking to his counsel on the morning of the guilty plea hearing, and he did not recognize his signature on the written plea colloquy. *Id.* at 13. Fassnacht argues that his counsel was aware that Fassnacht had a seizure the day prior to the guilty plea hearing, and that counsel's failure to stop the proceedings constituted ineffective assistance. *Id.* at 14.

In its Opinion, the PCRA court set forth the relevant law, addressed Fassnacht's claim, and concluded that it lacks merit. *See* PCRA Court Opinion, 12/8/16, at 4-13. Because we conclude that the PCRA court's determinations are supported by the record and free of legal error, we affirm on this basis as to Fassnacht's second claim. *See id.* We additionally note that Fassnacht does not allege that, had his counsel been effective, he would

---

[1] Moreover, as the PCRA court observed, Dr. Martin failed to identify the facts from which he based his opinion. Moreover, Dr. Martin's letter did not address Fassnacht's particular circumstances, and instead, merely described common complaints following a seizure. *See* PCRA Court Opinion, 12/8/16, at 12 n.9; *see also* Pa.R.E. 705 (stating that "[i]f an expert states an opinion[,] the expert must state the facts or data on which the opinion is based.").

not have pled guilty. *See Commonwealth v. Timchak*, 69 A.3d 765, 770 (Pa. Super. 2013) (stating that with regard to the prejudice prong of an ineffective assistance of counsel claim, "where an appellant has entered a guilty plea, the appellant must demonstrate it is reasonably probable that, but for counsel's errors, he would not have pleaded guilty and would have gone to trial.") (citation and quotation marks omitted). Thus, Fassnacht is not entitled to relief on his second claim.

In his third claim, Fassnacht contends that the PCRA court erred in concluding that his guilty plea was knowingly, voluntarily, and intelligently entered. Brief for Appellant at 15-16. Fassnacht argues that if his "testimony is taken in conjunction with the report of Dr. Martin, it is evidence that [] Fassnacht's plea was not knowing, intelligent, or voluntary." *Id.* at 16.

Fassnacht failed to include citation to and discussion of relevant legal authorities in support of his contention, with the exception of one citation instructing this Court to consider the totality of the circumstances. *See* Brief for Appellant at 16. Instead, Fassnacht baldly claims that his guilty plea was involuntarily entered, without citing any evidence in the record to support his claim. Accordingly, his claim is waived. *See* Pa.R.A.P. 2119(a); *see also Samuel, supra.* We additionally point to the PCRA court's analysis of Fassnacht's ineffectiveness claim, wherein the court addressed the underlying claim that Fassnacht's guilty plea was not knowingly, intelligently,

and voluntarily entered, and affirm on this basis as to Fassnacht's third claim. **See** PCRA Court Opinion, 12/8/16, at 7-13 (concluding that Fassnacht's guilty plea was knowingly, intelligently, and voluntarily entered, and that Fassnacht had not satisfied his burden of proving the he was suffering from a mental impairment that rendered the plea involuntary).

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/31/2017

D. Dougherty, Esq

Circulated 08/10/2017 12:02 PM

**IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA**
**C R I M I N A L**

COMMONWEALTH OF PENNSYLVANIA  :
                                       :
            v.                  :       Nos. 2763-2007, 3473-2008,
                                         :           5913-2014, 0895-2015
CLIFFORD L. FASSNACHT      :

**O P I N I O N**

BY:    ASHWORTH, J., DECEMBER 8, 2016

Before the Court is Clifford L. Fassnacht's amended petition pursuant to the Post Conviction Collateral Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546.  Following a hearing in this matter, the amended petition will be denied.

**I.    Background**

By Information docketed at No. 5913-2014, Petitioner was charged with two counts of burglary, two counts of criminal conspiracy to burglary, and three counts of theft by unlawful taking.[1]  Between September 23, 2014 and October 13, 2014, Petitioner and one or two accomplices entered three different Lancaster County properties and stole welding cable and copper wiring valued at $1,900.00.  On all three occasions, witnesses observed the co-conspirators and the vehicle being driven by them, a Jeep Cherokee.  Two women specifically identified Petitioner from photo lineups, after having been engaged in conversation with him while his accomplice stole their personal property.

---

[1] 18 Pa.C.S.A. § 3502(a)(4), 18 Pa.C.S.A. § 903, and 18 Pa.C.S.A. § 3921(a), respectively.

By Information docketed at No. 0895-2015, Petitioner was charged with burglary, criminal conspiracy to burglary, robbery, theft by unlawful taking, and criminal mischief.[2] On October 14, 2014, Petitioner and two accomplices illegally entered a work shop at Elizabeth Farms and stole scrap metal valued at approximately $100.00. Upon being confronted by two employees in their pick-up truck, the co-conspirators rammed their Jeep Cherokee into the driver's side of the truck and fled the scene. Petitioner was identified by the victims as the male who was inside the building and exited carrying the stolen property.

On June 3, 2015, Petitioner entered a negotiated plea at Docket No. 5913-2014 to a sentence of three to six years' incarceration. (Notes of Testimony (N.T.), Guilty Plea/PV/Sentencing at 11.) At No. 0895-2015, Petitioner pleaded guilty to all charges except robbery for a sentence of 33 to 66 months' incarceration.[3] (Id. at 10-11.) At that time, Petitioner was also sentenced on two probation/parole violations at Docket Nos. 3473-2008 and 2763-2007[4] to a term of one to two years' incarceration, with those sentences to run concurrent with one another but consecutive to the negotiated plea agreements at Nos. 5913-2014 and 0895-2015, for an aggregate sentence of 45 to 90 months' incarceration. (Id. at 13.)

---

[2]18 Pa.C.S.A. § 3502(a)(4), 18 Pa.C.S.A. § 903, 18 Pa.C.S.A. § 3701(a)(1)(iv), 18 Pa.C.S.A. § 3921(a), and 18 Pa.C.S.A. § 3304(a)(5), respectively.

[3]The robbery charge was *nolle prossed*. (N.T., Guilty Plea/PV/Sentencing at 2.)

[4]At Docket No. 3473-2008, Petitioner entered a plea of guilty on December 11, 2009, to the charges of burglary, theft by unlawful taking and criminal trespass. On the same date, Petitioner pleaded guilty at Docket No. 2763-2007 to the charges of theft by unlawful taking, receiving stolen property, criminal conspiracy (two counts), owning, operating or conducting a chop shop, possessing altered or illegally obtained property, and selling vehicle obtained from chop shop.

2

At the conclusion of the sentencing hearing, I informed Petitioner of his rights to file post-sentence motions within ten days and to file an appeal to the Superior Court of Pennsylvania within thirty days. (N.T., Guilty Plea/PV/Sentencing at 14-15.) Petitioner filed neither post sentence motions nor a direct appeal to the Superior Court from the judgment of sentence imposed on June 3, 2015. Petitioner was represented at the guilty plea and sentencing hearing by the Lancaster County Office of the Public Defender, specifically, Douglas A. Conrad, Esquire.

On October 1, 2015,[5] Petitioner filed a timely[6] *pro se* petition for post conviction collateral relief which claimed ineffective assistance of counsel which so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. Pursuant to Rule 904(A) of the Pennsylvania Rules of Criminal Procedure, Dennis C. Dougherty, Esquire, was court-appointed on October 14, 2015, to represent Fassnacht on his collateral claims and was granted leave to file an amended petition by December 18, 2015. An additional 60 days was requested by counsel to complete his review of the case, and the request was granted by the Court.

---

[5]The pleading is deemed filed on the date of mailing, October 1, 2015, rather than the date of docketing, October 6, 2015, pursuant to the "prisoner mailbox rule." **Commonwealth v. Crawford**, 17 A.3d 1279, 1281 (Pa. Super. 2011) ("Under the prisoner mailbox rule, we deem a *pro se* document filed on the date it is placed in the hands of prison authorities for mailing.").

[6]The PCRA mandates that all petitions for post conviction relief be filed within one year of the date upon which the judgment becomes final. **Commonwealth v. Lawson**, 90 A.3d 1, 5 (Pa. Super. 2014). For purposes of the PCRA, a judgment of sentence becomes final at the conclusion of direct review. 42 Pa.C.S.A. § 9545(b)(3). *See also* **Commonwealth v. Jones**, 54 A.3d 14, 17 (Pa. Super. 2012). If a defendant does not file a direct appeal, his judgment of sentence becomes final for PCRA purposes 30 days after imposition of sentence. **Commonwealth v. Brown**, 767 A.2d 576, 578 n.2 (Pa. Super. 2001). Since Fassnacht did not file an appeal, his judgment of sentence became final 30 days after June 3, 2015. Fassnacht, therefore, had until July 3, 2016, to file his PCRA motion. As such, his motion is timely.

3

On February 22, 2016, Fassnacht filed an amended petition which solely challenged the effective assistance of trial counsel. The Commonwealth filed a timely response, acknowledging the need for a hearing. Accordingly, an evidentiary hearing was held on Fassnacht's amended petition on May 26, 2016, at which time testimony was heard from Attorney Conrad and Petitioner. At the conclusion of the hearing, PCRA Counsel requested that the record remain open so that he could have the opportunity to submit a report addressing the effect that a seizure would have on an individual, which was one of Petitioner's primary claims for PCRA relief. This request was granted. On June 16, 2016, PCRA Counsel petitioned the Court for funds to obtain the aforementioned expert's report, which was also granted.

On July 14, 2016, PCRA Counsel filed a motion to submit into evidence the report and *curriculum vitae* of Timothy Martin, D.O., Ph.D. The Commonwealth opposed the request to have Dr. Martin's report entered into evidence. On August 24, 2016, after considering Petitioner's motion, the Commonwealth's response, and oral argument of counsel, the motion was denied and the record of the evidentiary hearing was ordered closed. Briefs having been filed by the parties on October 11, 2016, and November 10, 2016, this matter is ripe for disposition.

## II.    Eligibility for PCRA Relief

In order to prevail on a claim of ineffective assistance of counsel made in the post conviction context, a defendant must overcome the presumption that counsel is effective by establishing by a preponderance of the evidence that: the underlying claim has arguable merit; trial counsel had no reasonable basis for proceeding as he did; and

4

the defendant suffered prejudice. *See* 42 Pa.C.S.A. § 9543(a)(2)(ii); **Commonwealth v. Spotz**, 616 Pa. 164, 187, 47 A.3d 63, 76 (2012) (*citing* **Commonwealth v. Pierce**, 515 Pa. 153, 158-59, 527 A.2d 973, 975-76 (1987)). Furthermore, "[t]he entry of a guilty plea constitutes a waiver of all defenses and defects except claims of lack of jurisdiction, invalid guilty plea, and illegal sentence." **Commonwealth v. Kennedy**, 868 A.2d 582, 593 (Pa. Super. 2005). Fassnacht has not challenged the jurisdiction of this Court or the legality of his sentence. Fassnacht does dispute, however, the validity of his guilty plea.

"Allegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused the defendant to enter an involuntary or unknowing plea." **Commonwealth v. Hickman**, 799 A.2d 136, 141 (Pa. Super. 2002) (citation omitted). *See also* 42 Pa.C.S.A. § 9543(a)(2)(iii). "Where the defendant enters his plea on the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." Id. (citations and internal quotation marks omitted).

In assessing the voluntariness of a guilty plea, our Superior Court has noted that "[t]he law does not require that [the defendant] be pleased with the outcome of his decision to enter a plea of guilty; rather [a]ll that is required is that [the defendant's] decision to plead guilty be knowingly, voluntarily and intelligently made." **Commonwealth v. Brown**, 48 A.3d 1275, 1277 (Pa. Super. 2012) (citations and internal quotation marks omitted).

> With regard to the voluntariness of a plea, a guilty plea colloquy
> must affirmatively demonstrate the defendant understood what the

5

plea connoted and its consequences. Once the defendant has entered a guilty plea, it is presumed that he was aware of what he was doing, and the burden of proving involuntariness is upon him.

**Commonwealth v. Willis**, 68 A.3d 997, 1002 (Pa. Super. 2013) (citations and internal quotation marks omitted).

In determining whether a defendant entered into a plea of guilty knowingly, voluntarily and intelligently, the PCRA court "is free to consider the totality of the circumstances surrounding the plea, . . . including, but not limited to, transcripts from other proceedings, 'off-the-record' communications with counsel, and written plea agreements." **Commonwealth v. Allen**, 557 Pa. 135, 146-47, 732 A.2d 582, 588-89 (1999). Moreover, "[a] defendant is bound by the statements made during the plea colloquy, and a defendant may not later offer reasons for withdrawing the plea that contradict statements made when he pled." **Brown**, 48 A.3d at 1277.

## III.    Discussion

Fassnacht claims his trial counsel unlawfully induced him to enter into a plea. In support of this argument, he avers that: (1) defense counsel forced Petitioner to proceed with the guilty plea the day after he suffered a seizure which rendered him incapable of making a knowing and voluntary decision; and (2) defense counsel failed to investigate Petitioner's potential defense. Additionally, Fassnacht contends that, having entered an invalid plea, defense counsel then failed to file a petition to withdraw the plea, and further failed to perfect an appeal upon request of Petitioner. For the reasons that follow, Petitioner's claims of ineffective assistance of counsel must fail.

6

## A.    Unknowing and Involuntary Plea

Initially, Fassnacht claims his guilty plea was unknowingly and involuntarily entered as a result of his alleged incompetence based on the lingering effects of a seizure suffered the day before his guilty plea. (Amended PCRA Petition at ¶¶ 9-10.) Petitioner further avers that defense counsel was aware of this seizure and should have continued the plea to allow Petitioner to recover and "not be under the mental haze caused by his seizure." (Id. at ¶ 11.)

A well-settled principle in this Commonwealth is that "a defendant is presumed to be competent to stand trial." **Commonwealth v. Santiago**, 579 Pa. 46, 67, 855 A.2d 682, 694 (2004). Furthermore, "the burden is on [the defendant] to prove, by a preponderance of the evidence, that he was incompetent to stand trial." Id. In order to meet this burden, a defendant must establish that he was either unable to understand the nature of the proceedings against him or to participate in his own defense. Id. *See also* 50 Pa.C.S.A. § 7402(a) (a defendant is deemed legally incompetent if he or she is "substantially unable to understand the nature or object of the proceedings against him or to participate and assist in his defense").

Our Superior Court has set forth the relevant standard to determine a defendant's mental competency to enter a guilty plea as follows: whether "the defendant comprehends the crime for which he stands accused, is able to cooperate with his counsel in forming a rational defense, and has a rational and factual understanding of the proceedings against him." **Willis**, 68 A.3d at 1002. This rule is

7

commonly applied to determine whether a defendant knowingly, voluntarily and intelligently entered a plea of guilty.

I begin my analysis as to the voluntary, knowing and intelligent nature of Fassnacht's plea by examining the totality of the circumstances surrounding the plea. The record establishes that a lengthy and thorough guilty plea colloquy was conducted. Fassnacht was advised of the charges against him and the elements of those offenses as defined by the Crimes Code and the Pennsylvania Standard Jury Instructions (Criminal) were explained to him. (N.T., Guilty Plea/PV/Sentencing at 4-5.) Fassnacht was also advised that by pleading guilty he was waiving his rights to a jury trial, the presumption of innocence, and other relevant attributes of procedural due process. (Id. at 3-4.) He acknowledged that he understood that he was innocent until proven guilty, he did not have to plead guilty, and that it was his choice to plead guilty. (Id.)

The maximum sentences and sentencing guidelines for each charge were also reviewed with Fassnacht during the colloquy. (N.T., Guilty Plea/PV/Sentencing at 5-6.) Fassnacht acknowledged that because of his "repeat felony offender" status he was maxed out. (Id. at 7.) Fassnacht stated that he understood that the maximum sentence, if all the charges were sentenced consecutively, would be 56 years in jail and a fine of $137,500.00. (Id. at 6.)

In addition to the colloquy in open court, I reviewed with Fassnacht the 7-page, 77-question written guilty plea "long form" completed by defense counsel. (N.T., Guilty Plea/PV/Sentencing at 7.) In this document, Fassnacht manifested his understanding of the offenses against him, the maximum sentences and the procedural due process rights waived by a guilty plea. (Id.) He indicated that he reviewed the colloquy form

8

with his attorney and signed it. (Id.) Fassnacht had no questions of his attorney or of the Court regarding the form. (Id.)

I also reviewed the factual basis of the plea, as summarized by Assistant District Attorney Maria Cusick. (N.T., Guilty Plea/PV/Sentencing at 7-8.) Fassnacht admitted to the facts recited by the prosecutor which formed the basis for the charges; thus, defeating a claim of innocence. (Id. at 8.)

Lastly, the record establishes that Fassnacht's mental and physical health was fully revealed at the guilty plea hearing. Attorney Conrad advised the Court:

> . . . [Fassnacht] has a long history of drug addiction, which probably goes along with his criminal record.
> The last time he was in SCI he was diagnosed with a tumor. I'm not sure if it is cancerous or not. He suffers from frequent seizures. He just had one last night at LCP.

(N.T., Guilty Plea/PV/Sentencing at 8-9.[7]) When asked if he would like to make a statement to the Court, Fassnacht referred only to his drug addiction and made no mention of his seizures: "I've been fighting drug addiction since I was a kid. And I heard a lot about the program doing good. I should have been in it 20 years ago." (Id. at 10.) Fassnacht specifically acknowledged that "unfortunately" because of his addiction and his prior criminal behavior, he was "going to be warehoused" for his newest charges. (Id.)

Based upon the representations by Fassnacht, his attorney and the Commonwealth, the negotiated guilty plea presented on Fassnacht's behalf was

---

[7]Attorney Conrad testified that Petitioner instructed him to inform the Court of his alleged seizure the night before the guilty plea hearing, and defense counsel complied. (N.T., PCRA Hearing at 19-20.)

9

accepted. (N.T., Guilty Plea/PV/Sentencing at 10.) On review, considering all the circumstances attendant to the plea, including the adequacy of the plea colloquy, and Fassnacht's responses therein, and the representations by defense counsel, the guilty plea was knowing, voluntary and intelligent, and was properly accepted.

Fassnacht, however, claims that his guilty plea is nonetheless invalid based on the ineffective assistance of counsel. Specifically, Fassnacht now contends that, despite what was said during the oral colloquy and what was specifically spelled out in the written colloquy, it was not his intention to plead guilty and that counsel unlawfully induced him to plead guilty when he was suffering from the adverse effects of a seizure which took place the night before his guilty plea.

Fassnacht testified at the PCRA hearing that at the time of his plea he was "dizzy" and did not know what he was doing. (N.T., Guilty Plea/PV/Sentencing at 36, 42.) He further claims to have no memory of going through the plea paperwork, colloquy, or the guilty plea itself.[8] (Id. at 39, 40.) Fassnacht, however, advanced no evidence, besides his own self-serving and uncorroborated statements, that he was not competent to proceed or that he did not understand the guilty plea proceedings because of his alleged mental impairment. I find Fassnacht's testimony to not be credible and in conflict with his testimony at the time of the guilty plea.

_____

[8]Fassnacht initially testified that Attorney Conrad did not go over the questions on the written colloquy with him on June 3, 2015. (N.T., PCRA Hearing at 35.) On cross-examination, however, Fassnacht noted that because his attorney "swore under oath that he went through the paperwork with [him]," he would "have to assume" that Attorney Conrad did, in fact, review the colloquy questions with him. (Id. at 44.)

10

At the plea hearing, Fassnacht testified that it was his decision to waive a jury trial and plead guilty, and that no promises, threats or guarantees had been made to or against him to force him to plead guilty. (N.T., Guilty Plea/PV/Sentencing at 3; Guilty Plea Colloquy at ¶¶ 49-52.) Thus, the only evidence suggesting that Fassnacht's guilty plea was induced by counsel's alleged pressure is Fassnacht's proffered testimony, which directly contradicts his own statements made during the oral plea colloquy and on the written colloquy.

> The longstanding rule of Pennsylvania law is that a defendant may not challenge his guilty plea by asserting that he lied while under oath, even if he avers that counsel induced the lies. . . . A person who elects to plead guilty is bound by the statements he makes in open court while under oath and he may not later assert grounds for withdrawing the plea which contradict the statements he made at his plea colloquy. . . .
>
> . . .
> A criminal defendant who elects to plead guilty has a duty to answer questions truthfully. We [cannot] permit a defendant to postpone the final disposition of his case by lying to the court and later alleging that his lies were induced by the prompting of counsel. . . .

**Commonwealth v. Pollard**, 832 A.2d 517, 523-24 (Pa. Super. 2003) (citations omitted).

Moreover, Fassnacht's current claim that he was in a "mental haze" at the time of his plea is at odds with the observations of his attorney, Douglas Conrad, who testified that, at the time of the plea, Fassnacht did not appear to be suffering from any mental disability related to his seizure the night before.

> . . . [I]n my dealings with [Fassnacht], he seemed to under – understand what was going on. I could talk to him. He was answering me in – in a normal basis.
> It didn't appear – and we went over the colloquy. He was answering the questions in a – the appropriate manner.

11

> I – I felt that he, in light of the many clients that I have had who have had mental health issues and/or other issues, that he understood what was going on.

(N.T., PCRA Hearing at 20.) I asked a follow-up question of defense counsel as to whether "at any time during [counsel's] communications with Mr. Fassnacht just prior to the guilty plea or during the guilty plea did [counsel] find that . . . [Fassnacht] was not able to knowingly, voluntarily and intelligently enter into this guilty plea," to which counsel responded, "No . . . [Fassnacht] seemed much as he had every time I met with him." (Id. at 26; *see also* 27.)

Furthermore, at the time of the plea, Fassnacht was clear-headed enough to discuss his 20-year battle with addiction, and his hope that the Department of Corrections' rehabilitation program would benefit him. (N.T., Guilty Plea/PV/Sentencing at 10.) He certainly had the opportunity and the cognitive awareness to similarly discuss his seizures and any resultant thought disturbances. As Fassnacht's current claims are at odds with the testimony he provided at his guilty plea and are simply not credible, they must be rejected.

Finally, Fassnacht presented no evidence of actually having suffered a seizure, absent his own testimony and the testimony of defense counsel of what Petitioner told him.[9] Pennsylvania law presumes that a defendant who enters a guilty plea was aware of what he was doing, and he therefore bears the burden of proving otherwise.

---

[9]Petitioner attempted to introduce the expert report of Dr. Martin who opined that "it does sound as though [Fassnacht] had a grand mal seizure." (Motion to Submit into Evidence, Exhibit 1A.) Dr. Martin fails, however, to identify the facts from which he bases that opinion, other than what he was told by defense counsel. The Commonwealth, therefore, objected to the proffered report and I did not permit its admission into evidence.

12

**Commonwealth v. Reid**, 117 A.3d 777, 783 (Pa. Super. 2015) (*citing* **Pollard**, 832 A.2d at 523). Thus, under the circumstances of this case, it was Petitioner's burden to demonstrate that he was suffering under some sort of mental impairment, and that the impairment rendered the plea involuntary. *See* **Commonwealth v. Jackson**, 569 A.2d 964, 966 (Pa. Super. 1990); **Commonwealth v. Hazen**, 462 A.2d 732, 735 (Pa. Super. 1983).

In **Commonwealth v. Willis**, 68 A.3d 997, 1009 (Pa. Super. 2013), the Superior Court found "the mere fact that [the defendant] was taking prescribed psychotropic medication at the time of his plea does not, of itself, result in the conclusion he was unable to enter a knowing, voluntary and intelligent guilty plea." Similarly, the unsubstantiated allegation that Fassnacht suffered a seizure which impaired his thinking does not, of itself, result in the conclusion that his plea was invalid. Absent proof of some cognitive defect, and in light of the fact that Fassnacht participated in a lengthy colloquy and cogently answered each question addressed to him, this claim is without merit, and must be rejected. *See* **Jackson**, *supra* (concluding that when a defendant appropriately and coherently participates in an oral plea colloquy, his plea will be considered to be knowing, voluntary, and intelligent, even if the petitioner is under the influence of a substance at the time); **Hazen**, *supra* (holding that the defendant, who was on medication after an apparent suicide attempt, and later asserted counsel was ineffective in permitting him to plead guilty since he felt tranquilized during the plea hearing, was not entitled to withdraw his plea where defense counsel opined that he was competent and trial court found that he cogently participated in a lengthy plea colloquy).

13

## B.    Lack of Pretrial Investigation

Next, Petitioner claims defense counsel (1) never met with him to review discovery, (2) never discussed with him the options other than pleading guilty, and (3) never conducted any pre-trial investigation.  (Amended PCRA Petition at ¶¶ 14-15.) With respect to the discovery review, Fassnacht testified at the PCRA hearing that counsel did visit him at the prison with the discovery and "tried to show [Petitioner] the discovery" but Petitioner said he could not sit and look at it.  (N.T., PCRA Hearing at 32.)  This is consistent with Attorney Conrad's testimony that he gave Petitioner an opportunity to review the discovery in his cases.  (Id. at 14.)  Fassnacht further testified that an investigator from the Public Defender's Office also came to the prison to review the discovery with him.  (Id. at 36.)  Thus, Fassnacht's own testimony refutes his first claim that defense counsel never met with him to review discovery, and this claim must be rejected.

Regarding defense counsel's failure to discuss with Petitioner options other than pleading guilty, Petitioner testified that counsel told him that the alternative was going to trial but that, with his prior record score and the recommended sentencing guidelines based upon Fassnacht's designation as a repeat felony offender, he risked a consecutive sentence on the two counts of burglary, the three counts of theft by unlawful taking, and the conspiracy count.[10]  (N.T., PCRA at 30.)  Thus, Fassnacht's

---

[10]The guideline sentences for burglary and conspiracy were 2 to 3 years' incarceration, and for theft 12 to 18 months' incarceration. Thus, a consecutive sentence on the six counts could have been as high as 9 to 16.5 years' incarceration. (N.T., Guilty Plea/PV/Sentencing at 6.)

14

claim of counsel's failure to discuss with him alternative strategies to pleading guilty is again belied by his own testimony.

Lastly, as for Fassnacht's claim of ineffectiveness for counsel's failure to properly investigate his defense of innocence, Fassnacht must point to a specific harm suffered as a result of trial counsel's alleged failure, and must show that an investigation would have uncovered something that would have been helpful to Petitioner's case. **Commonwealth v. Rainey**, 928 A.2d 215, 224 (Pa. Super. 2007). Here, Fassnacht bases his claim of innocence on the fact that in discovery one of the suspects was described by a witness as having rotten teeth. (N.T., PCRA Hearing at 16.) Fassnacht claims not to have rotten teeth. (Id. at 31.) Moreover, in one photo lineup, a victim identified Dennis Fassnacht, Petitioner's younger brother who allegedly has rotten teeth, as one of the individuals who entered his property.[11] (Id. at 17.) For these reasons, Fassnacht claims his attorney was ineffective for failing to investigate this defense. (Id. at 31-32, 38.)

---

[11]According to the Affidavit of Probable Cause at No. 5913-2014, it was Lavern Redcay who identified Dennis Fassnacht from a photo lineup as the front seat passenger in a vehicle that drove down his farm lane on October 2, 2014, and asked if they could hunt on his property. There was no criminal activity by the two men in the Jeep at that time. However, on October 13, 2014, Lavern's wife, Betty Jo Redcay, reported to the police that she observed a white male in his early 50's with gray/blond hair exit a Jeep and cut wire from the welding equipment. She, however, did not make an identification of the perpetrators. Thus, it would appear that Dennis Fassnacht was not actually identified as one of the criminal actors in these charged burglaries.

However, at least four other witnesses identified Clifford Fassnacht as either the person they spoke with while another male burglarized their property or the person they observed stealing the personal property. Alta Eberly had conversations on two occasions, September 23, 2014 and September 24, 2014, with a white male whom she positively identified as Clifford Fassnacht in a photo lineup. Another juvenile witness, L.Z., picked Clifford Fassnacht out of a photo lineup as the white male who exited a Jeep and asked her about hunting on her land while another individual stole welding wire from the Zimmerman work shop. Finally, James McClearen, Jr., and Jeffrey Strauss identified Clifford Fassnacht as the individual who entered a work building at Elizabeth Farms and cut wire from an industrial welder before fleeing in a Jeep with two other men.

15

It is important to first note that Fassnacht's claim of innocence is contradicted by his admission of the facts supporting the elements of each offense to which he pleaded guilty. (N.T., Guilty Plea/PV/Sentencing at 8.) Despite Fassnacht's assertion at the PCRA Hearing that he was "100 percent innocent" of these charges, he admitted on cross examination that he did not tell the Court at his guilty plea hearing about the mistaken identity with his brother, and that he should not be pleading guilty. (Id. at 43.)

Relative to the investigation, defense counsel testified that neither he nor anyone from the Public Defender's Office went out to investigate Fassnacht's brother, Dennis, as a possible suspect because of his rotten teeth. (N.T., PCRA Hearing at 18.) The discovery, however, suggests that such an investigation would not have uncovered anything that would have been helpful to Petitioner's case. *See* **Rainey**, *supra*.

Had there been only one perpetrator of these crimes, Petitioner might have been able to mount a defense based upon his alleged mistaken identity with his brother. The evidence, however, revealed that for each criminal episode there were at least two male accomplices. The *modus operandi* appeared to be that while one male kept a resident of the property engaged in conversation, the other male surreptitiously entered an outbuilding and stole the personal property. Thus, simply placing Dennis Fassnacht at the burglaries does not exonerate Clifford Fassnacht.

Moreover, Christopher Irvin, one of the three co-conspirators to the burglary and hit and run incident at Elizabeth Farms on October 14, 2014, gave a statement to the police implicating Clifford Fassnacht in those crimes.[12] Irvin further admitted to driving

---

[12]Dennis Fassnacht was not one of the three co-conspirators involved in this criminal episode, and Petitioner was identified by two of the victims as the male who entered the

16

both Fassnacht brothers to a farm property approximately one week before, where the two brothers stole black cable wire from a barn. In his police statement, Irvin explained that, because of a debt owed to Clifford and Dennis Fassnacht, he had allowed the brothers to also borrow his vehicle, a Jeep Cherokee, on multiple occasions to commit other burglaries and thefts together.

Given the evidence in this case, Petitioner cannot establish that there is a reasonable probability that the outcome of his case would have been different but for counsel's alleged ineffectiveness in failing to investigate his brother's teeth. *See* **Chmiel**, 612 Pa. at 362, 30 A.3d at 1127-28. Four eyewitness to three separate criminal episodes positively identified Clifford Fassnacht in photo lineups as one of the perpetrators. Moreover, one of those four witnesses repeated her identification of Petitioner at the preliminary hearing. (N.T., PCRA Hearing at 15-16.) There was no lack of evidence linking Petitioner to these crimes. Accordingly, Petitioner has not met the burden of proof for this PCRA claim.

## C.    Withdrawal of Guilty Plea/Direct Appeal

Lastly, Fassnacht claims trial counsel was ineffective for failing (1) to petition for a withdrawal of his guilty plea, and (2) to perfect an appeal after being requested to do so. (Amended PCRA Petition at ¶¶ 12-13.) Generally, an attorney can be found to be ineffective for failing to perfect an appeal upon the defendant's request. **Commonwealth v. Spencer**, 892 A.2d 840, 842 (Pa. Super. 2006) (*citing*

---

building and exited with the stolen property. There was no mention of the perpetrator having rotten or missing teeth.

17

**Commonwealth v. Lantzy**, 558 Pa. 214, 736 A.2d 564 (1999)). In **Lantzy**, our Supreme Court held that an unjustified failure to file a direct appeal upon request will constitute prejudice *per se*, and if the remaining PCRA requirements are satisfied, a defendant does not have to demonstrate his innocence or the merits of the issue he would have pursued on appeal to be entitled to relief. Such relief is appropriate only where the petitioner pleads and proves that a timely appeal was in fact requested and that counsel ignored that request. Id. However, "counsel's failure to file post-sentence motions does not fall within the narrow ambit of ineffectiveness claims requiring no finding of prejudice." **Commonwealth v. Fransen**, 986 A.2d 154, 158 (Pa. Super. 2009).

In the instant case, the record reflects that Petitioner has failed to satisfy his burden of proof. Petitioner testified at the PCRA hearing that immediately after the guilty plea/sentencing hearing on June 3, 2015, he requested that his counsel file an appeal, and that Attorney Conrad's response was "it won't do no good." (N.T., PCRA Hearing at 37.) This testimony was directly contradicted by that of Attorney Conrad, who asserted that Petitioner never directed him to file either an appeal or a motion to withdraw the plea. (Id. at 26.) To the contrary, Attorney Conrad testified that after advising his client "that he should send something to [him] if he was requesting an appeal of anything within 10 days and/or 30 days," Petitioner told him: "[D]on't file it . . . [I'll] just PCRA [you] for everything."[13] (Id. at 21, 22.) Attorney Conrad took notes of his

---

[13]Petitioner acknowledged at his guilty plea hearing that Attorney Conrad reviewed with him his appeal rights as set forth in the written guilty plea colloquy form. (N.T., Guilty Plea/PV/ Sentencing at 14.) I also reviewed with Petitioner his two options for post-sentence review, which Petitioner stated he understood. (Id. at 14-15.) A post conviction collateral relief petition was not discussed.

18

meeting with Petitioner in the holding cell immediately following the guilty plea and sentencing. (Id. at 21.) As a result of their conversation, and having received no further communication from Petitioner regarding post-sentence motions or an appeal, defense counsel took no further action on behalf of his client. (Id. at 22.)

Petitioner's testimony that he requested counsel to file something after he was sentenced lacks credibility. The record establishes that Petitioner made an informed decision to enter his guilty plea and Petitioner's testimony that he was unhappy with the plea and wanted counsel to withdraw it and/or file an appeal directly contradicts statements made by Petitioner in both the written plea colloquy and at the guilty plea hearing. Petitioner cannot now avoid the consequences of his actions by claiming ineffective assistance of counsel.

## IV.    Conclusion

For the reasons set forth above, Fassnacht's amended petition for post conviction collateral relief lacks merit as there is nothing in the record indicating that defense counsel was ineffective in his representation of Fassnacht through the guilty plea and sentencing, or that the guilty plea was not knowing, intelligent and voluntary. Therefore, the amended petition must be dismissed following a hearing in this matter.

Accordingly, I enter the following:

19

**IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA**
**C R I M I N A L**

COMMONWEALTH OF PENNSYLVANIA     :

         v.                 :       Nos. 2763-2007, 3473-2008,
                                :            5913-2014, 0895-2015

CLIFFORD L. FASSNACHT        :

## O R D E R

AND NOW, this 8th day of December, 2016, upon consideration of Clifford L.

Fassnacht's amended petition for post conviction collateral relief, and following a hearing

on this matter, it is hereby ORDERED that said petition is DENIED.

Pursuant to Pa.R.Crim.P. 908(E), this Court advises Petitioner that he has the right

to appeal from this Order and the right to assistance of counsel in the preparation of that

appeal. Petitioner shall have 30 days from the date of this final Order to appeal to the

Superior Court of Pennsylvania. Failure to appeal within 30 days will result in the loss of

appellate rights.

It is further ORDERED that Petitioner shall have the right to appeal *in forma*

*pauperis* and to proceed with assigned counsel as provided in Pa.R.Crim.P. 122.

I certify this document to be filed
in the Lancaster County Office of
the Clerk of the Courts.

BY THE COURT:

_____
DAVID L. ASHWORTH
JUDGE

Jacquelyn E. Pfursich
ATTEST:   Clerk of Courts

Copies to:    Andrew T. LeFever, Assistant District Attorney
              Dennis C. Dougherty, Esquire